The first case is William 307-3286, Wood v. Department of Homeland Security. Thank you, Your Honor. May it please the Court, Michael Brandon on behalf of the opponent, Jason Woods. Good morning, Your Honor. Your Honor, as you know, this case is about almost entirely hearsay. It was a case that appeared before an arbitrator that heard a case on appeal from the termination of Mr. Wood by the Department of Homeland Security. The first charge, of course, was a conduct of unbecoming charge. The agency in this case tries to avoid calling the shoplifting charge exactly what it was. They instead say that what we really charged him with, what we really terminated him for, was the arrest and his conditional plea of guilty. The chief patrol agent in this case, chief patrol agent Michael Micey, made clear that what he sustained was a shoplifting allegation. But there's a plea of guilty to shoplifting. Why doesn't that establish the fact of the shoplifting? It was a conditional plea of guilty, Your Honor. I believe it was a plea essentially under the Alford doctrine. Well, where's the indication that – number one, where's the indication that it's an Alford plea? I believe that's the only thing that was said in papers that I've been able to see is the word conditional, which are men. That does not typically suggest Alford. Alford is a separate condition from most state and federal systems. Where's the indication that it's an Alford plea? That's the indication of the conditional language, and I believe if you read- Conditional won't do it. Is there anything else? I believe if you read Mr. Wood's testimony as far as what happened with the court proceeding, it was essentially an assembly line process. It doesn't make an Alford plea. There are lots of pleas of guilty every day by the hundreds in courts, and they're very rare are there Alford pleas. Arizona, as a matter of fact, strongly discourages Alford pleas. They have to be very explicit. When the record tells us this is an Alford plea, that's number one. Number two, why does that make a difference with respect to the issue of collateral assault? The first part of it, I think the agency would have to establish that it was a knowing plea that he was admitting to the allegations of what was presented to him, the shoplifting allegations. In this case, Mr. Wood testified that I went before the court. The court said you're eligible for this diversion program. Would you like to enter into it? He said yes. Okay, sign on the X. That was the extent of it. So there was no knowing plea. So you're collaterally challenging the plea? I mean, the plea is a judicial admission of guilt. Now, in the Alford setting, there is a factual basis for the plea, even though the defendant does not admit factually to the alleged acts. But there's still a judicial admission of guilt as to which collateral estoppel applies. The law is uniform on that, that collateral estoppel applies regardless of whether the plea is an Alford plea or not. So what is it about this case that makes collateral estoppel unavailable to the MSPD? The fact that Mr. Wood did not know that he was admitting to the charges. All he knew was that he was entering into the diversion program. His lawyer told him he was entering into the diversion program. The court said you're eligible for this diversion program. He doesn't know he was included guilty? After the fact, he did. Once he went to the hearing, and that was pointed out by the agency's counsel in the forum. Does he have a difficulty with his failure to report the incident? No, I don't believe so. The agency didn't prove that there was an obligation to report the allegation for the arrest back in 2003 when he was arrested. What we have in the evidence is a printout from, I believe, a month or two prior to the hearing. A month or two prior to the arbitration hearing. What Mr. Wood received when he was employed by the Border Patrol is a 500 plus page handbook. That handbook was taken from him in 1998 when he was first terminated. It was never returned to him. The agency never proved what was contained in that 1998 handbook that was taken from him. They never proved that that requirement to report was contained in the 1998 handbook. Subsequent to that- Do they have to prove that? I believe due process says that before it can hold an employee accountable for violating a rule or regulation, the employee has to be on notice of what the rule is. There's obviously a rule in the new handbook. The agency failed to establish that there was any rule in the handbook that Mr. Wood had been issued in 1998. I'm trying to understand whether notice of such a requirement would be kind of a fundamental understanding of every employee. That if you've had a significant arrest and you are a law enforcement officer yourself, doesn't that have some impact upon the integrity of your position and your ability to continue to perform? I think a conviction certainly would. If he was convicted of something, I think he would probably have an obligation to disclose that because that could impact his ability to testify in court. There would be potential breaking implications. But as far as a simple arrest, I think it's consistent with the board case law. The board says that an arrest alone cannot- So you're hanging everything on whether or not the conditional plea was an adjudication of guilt or not. That's part of it, Your Honor. The other part of it is the hearsay basis that there were no first-hand witnesses as far as what happened. The arbitrator did not go into the morning cop analysis as far as which statements to delete. If you look at the deputy's report, the night of the incident, the employee would say, we had to chase Mr. Wood out of the store, stop him in the parking lot, and bring him back into the store. And essentially he was uncooperative. When the agency's investigator, the OPR representative, interviewed those same witnesses, the witnesses now said, we stopped him inside the store, we stopped him at the threshold, he didn't leave the premises. Significant change from what they told the deputy, which led to the shoplifting arrest. That's why we needed to hear from the witnesses in order to establish whether there was, in fact, shoplifting. When Mr. Wood is finally interviewed by the Office of Professional Responsibility some 16 months after the arrest, they give him the Gary V and Cal kinds of admonishments. He said, I was there trying to get firewood. I walked up to the front of the store where they keep the firewood. That's why I was there. Did the firewood story come in a little late? It came in the first time the agency asked him what happened. They certainly could have asked him what happened as soon as they found out about the arrest, which was December 30th, about a week, ten days after the incident. They didn't interview him for 16 months. He didn't tell anybody what happened, except for his criminal defense attorney, for 16 months until the OPR investigator's question time. That's the first time he had the opportunity to tell a side of the story to the agency. That's the first time he tells someone about the firewood. That's the first time he's given the opportunity to tell them exactly what transpired throughout the course of that evening. Well, he didn't tell the store employees, as I understand it, who was heading for the firewood. We don't know, because we didn't get to cross-examine the store employees. Well, nothing in any of the reports suggests anything about the firewood. Instead, it was the confusion and the suggestion that he was under the influence of the medicines he was taking. That was his explanation, as I understand it, to the store employees. That's what he told the store employees, and when the deputies stopped him— Not that he was heading for the firewood. We don't know, because all we have is the OPR investigator going to the store employees after our heated exchange during the OPR interview. Did he say that he told the store employees that he was heading for the firewood? During the OPR interview, he says he believes he told them that he was heading for the firewood. That certainly was his intent. That's what he expressed during the OPR interview to the investigator. But again, we didn't have the opportunity to cross-examine those store employees. Did he testify to that effect in the hearing? Yes. That he was heading—no, that he told the store employees that he was heading for the firewood? He believed he told the store employees that he was heading for the firewood. So what specifically is the deficiency in the hearsay? The hearsay, of course, is admissible in these hearings. Absolutely. So what is the deficiency? The deficiency is a conflicting statement. I believe if the arbitrator had gone through the Bormannkopf analysis, he would have seen the deficiencies in the hearsay statements. On the one hand, we have the store employees saying, we chased him out of the store. If that was, in fact, the case, I think that would show the requisite intent for the shoplifting charge. The intent to permanently deprive the store of their property. If they chased him out to the vehicle in the parking lot and then to bring him back, I think it's pretty safe to say there was a shoplift that attempted to be occurred. On the other hand, if they stopped him at the threshold of the store where the firewood was, which is what Mr. Wood's testimony was, I think the requisite intent is not there as far as a shoplifting allegation was concerned. That's why it's important for us to have the opportunity to cross-examine those witnesses. There was no testimony from anybody as far as why the witnesses were not called. There were four witnesses. The store's approximately two miles from the hearing location. There was no indication that the witnesses were unavailable. The affidavits that we have from the OPR investigator were the investigator's affidavits. They're not the affidavits of the store employees. The store employees never reviewed the affidavits for accuracy, never attested that this is what I had told the OPR investigator. In fact, they had never seen the affidavits. And the chief patrol agent, the deciding official of the case was frankly surprised that the store employees had never seen those affidavits. With that, I'd like to reserve the five minutes for rebuttal. Thank you, Your Honor. Ms. Coleman. May I please report? We respectfully request that this court confirm the arbitrator's decision in removing Mr. Wood from his position as a border patrol agent. Starting with the conduct of the coming charge, the charge was for the arrest and for the guilty plea. Mr. Wood does not contest that he pled guilty. He simply argues that it was an Alford-type plea, which is an argument that he never raised prior to his motion. He seems to contest it today. He seems to say through his counsel that he didn't know he was pleading guilty. He thought he was just entering a diversion program. Is that a distinction that we should give credence to? Clearly, he was pleading guilty. The information that we have from the state court indicates that it was a guilty plea. It doesn't indicate that it was a conditional plea, that if he completed the program and paid the fine, that he would not then have a conviction on his record. But it's clear from the state court record that it was a guilty plea. And a guilty plea is all that matters in terms of applying collateral assault with you. It doesn't matter that he was not later convicted. Does his understanding matter, though? If he thinks he is just working out a deal to make this all go away, does that ease, for instance, his burden to disclose it to his supervisor? No, it doesn't, because even in the case of an outward plea, it is a deal to make it go away. The Graybill case, this court's case, it was the same situation in which the individual decided to plead guilty rather than attempt to go ahead and trial him, even though he believed that he was innocent. It would be the same thing here. He agreed to go ahead with this type of plea. Whether he knew that he was admitting tax or not is not relevant. A guilty plea to the court is still a guilty plea. What makes this an outward plea? It's not an outward plea. An outward plea is a very specific kind of plea in which the defendant clearly knows that he's claiming innocence, claiming that whatever the facts were did not happen, but that the court makes a factual finding that there is, regardless of what the defendant says, there is some factual basis for pleading guilty, and the court then allows it. A strong factual basis is required for an outward plea. Right, yes, and then the court would then accept the guilty plea. In this case, there was no evidence of that chain of events happening. It was simply a conditional plea where Mr. Wood agreed to go through this class, pay the fine. The charges were eventually dropped. You rely on Graybill. Graybill does present a similar factual situation, but in that instance, there's imposed a five-year suspended sentence for sexual misconduct, and there's significant probationary requirements placed on the removed federal employee. This is at least a little different in the sense of the seriousness of the offense, isn't it? Is that distinction worthy of this court taking awareness of? It's a little different in the fact that in Graybill, there was a conviction following the guilty plea, and that's what led to these probationary restrictions on the defendant in that case, but here there was no conviction. That is a difference, but that's not a substantial difference in this court to consider. If we're assuming that this is an outward plea in order to compare it to the Graybill case, there does have to be a specific factual finding that there were facts supporting the guilty plea. In the Graybill case, the court basically found that that was the reason that the guilty plea could be collateral estoppel in a later proceeding was because there were these factual findings. So assuming, as Mr. Wood argues, that there was an outward plea in this case, there had to have been a specific factual finding by the state court, and that's what would have supported the collateral estoppel, not the conviction and any related probation or other punishment based on the conviction. So the factual finding is what supports the client collateral estoppel. Why do you think it's the factual determination by the court as opposed to the judicial admission of the plea of guilty that establishes the predicate for collateral estoppel? What case of work do you remember that? I mean, Graybill doesn't say that in so many words. Graybill seems to imply that that was its emphasis was on the factual portion of it because the petitioner in that case was arguing that it was an outward plea and that he claimed innocence and that he took the plea rather than risking going to trial even though he believed that he was innocent. And then the court found that because there was this factual finding, it didn't matter that he pled guilty and believed he was innocent because there had to be a factual basis for the plea. That was what led to the collateral estoppel in the later investigation proceeding. In terms of the failure to report his arrest charge, there was only... Let me ask you one other question on the conviction. I take it the only thing we have on the record dealing with the actual facts of the conviction are the papers at 309 and 310. Is that the index? Is that right? That's right. There's no further evidence relating to the actual facts surrounding the conviction other than Mr. Woods' testimony about his discussions with his lawyer prior to entering the plea, right? Right. There's nothing else that the arbitrator considered other than those pages of 309 and 310 and Mr. Woods' testimony concerning what happened with the plea. So we don't know that there was a factual finding made, but if we consider it to be an outward plea, there had to have been some sort of factual basis for it  How do you respond to his argument about the briefing? Hearsay evidence is handled by the arbitrator. Hearsay evidence is unquestionably admissible. Of course, it agrees with that. But you heard his argument. How do you respond to it? His argument was that there were some inconsistencies in the testimony. There weren't inconsistencies that were at all significant. There were some inconsistencies concerning whether he was near the door or somewhat through the door when he was arrested. That's not an inconsistency that matters in terms of his attempting to leave the store with the merchandise. When he has an alternative explanation on his way to the firewood, doesn't that make our presiding judge's point a little more compelling? Well, he never mentioned this firewood explanation at any time on the day that he was arrested. He never brought it up to any of the store employees. He never said anything to any of the deputies involved in his arrest. The first time that he brought up the firewood was several years later when the agency was investigating him. In April of 2005 was the first time he had mentioned firewood. This counsel says that he mentioned it to the employees at the time, and if we're dealing with kind of hearsay evidence in the first place, things get a little cloudy. Does that affect our analysis? Well, the investigator, Ms. Howe, at first didn't ask about firewood because there was no evidence that he was using firewood as his explanation. But when she interviewed him in April of 2005 and he brought up this firewood explanation, she actually went back and specifically asked all of the store employees and the deputies about this firewood explanation, and none of them recalled him or his companion, Ms. Cordulo, saying anything about firewood. So they had two, not just one, but two opportunities to say something about firewood, and all of them consistently testified that he never said anything about firewood to them on the day of the arrest. So that explanation is not a valid explanation based upon that. It appears that once he was being investigated, he attempted to come up with an alternative explanation for what happened. The employee said if he had mentioned firewood on that day, they certainly would have listened to his story rather than thinking that he was shoplifting. If he was near the firewood, they also all testified that he had been past the area for the firewood and he was stopped. So his explanation didn't even make any sense in terms of the firewood. The other issue with the firewood goes to the second charge, which is his lack of candor to the agency, which he admits is the most serious charge simply because of his role as a border patrol agent. He's required to be honest. He's required to testify in court. He can detain suspects. He has the ability to interrogate them. Someone in that kind of position needs to have a great deal of credibility. He has to be able, again, to testify in court. And we believe a charge that involves lying to his employer would obviously damage his credibility in court and damage his ability to do his job and, therefore, his removal based upon that charge would promote the efficiency of the service on that charge alone. The failure to arrest charge, he argues that there was no evidence that there was a requirement to report an arrest prior to the handbook that's contained in the record, but there was testimony that such a requirement existed as far back as 1980. Even if he didn't have the handbook immediately available at the time of his arrest, he certainly admits to having had it previously. He was also told about the arrest policy at his initial training. There's some evidence that he was not aware of the policy, given that he had been undergoing a background check during this time and had been consistently asking what the status of that check was. And then immediately after the arrest, stopped asking about the status of that background check. Even if he wasn't specifically aware of the policy, he should have known as a law enforcement agent that the agency would be interested in his arrest, regardless of whether it was a valid arrest or not, just the fact that it happened, the fact that he had contact with law enforcement officers. In that situation, it should have been something that he thought the agency should be aware of. For these reasons, we request that you affirm the arbitration. Thank you. Thank you. Just briefly, Your Honors. My colleague on the other side mentioned the Graybill case and said that it was essentially the same situation as the case that the court has before here today. It's not true. I believe Your Honor pointed out that there was no conviction in Mr. Wood's case as opposed to the Graybill case. The Graybill case that the court heard involved a conviction of Mr. Graybill. I believe this case is more analogous to the forced decision in Foster, which is the situation where there was no conviction, and the board in that case determined that collateral estoppel did not apply in that situation. So we believe that the arbitrator was bound to apply the board's decision in that case and determine that collateral estoppel did not apply. Since he determined that collateral estoppel applied essentially, or he said that the union's argument regarding hearsay essentially evaporated with the guilty plea, he didn't get to the hearsay analysis. He didn't get to the morning cop analysis, which is a problem that we have here, where there wasn't that balancing of the conflicting testimony. My colleague on the other side, regarding the hearsay testimony, said that the store employees all, quote, testified, quote, unquote, regarding the location of the firewood. That's not true. Again, there was no testimony from any of the store employees. I believe the quote, testimony, close quotes that he talks about is the statement to the OPR investigators that are counted in the OPR investigators affidavit, not in any affidavit on those prepared by or for the store employees. And lastly, as far as the failure to report the arrest, my colleagues mentioned that. That's on this part of Mr. Wood's training. I don't believe there's anything in the evidence that Mr. Wood specifically was trained about this requirement to report an arrest. The testimony came from Chief Petrolidge and Mike Nicely when he said that he went to the academy back in the early 80s. People were told about that, that they'd tell people about that, that there was nothing specific to Mr. Wood, to Mr. Wood's class. When the requirement came into play, if it was in the handbook, if it was in the handbook in 1998, that was taken from Mr. Wood. So with that, we'd ask that the court reverse the arbitrator's decision, find out if Mr. Wood did not engage in any misconduct, and order that he be reinstated with that statement. Thank you, Your Honor. Thank you.